IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE INEZ JOHNSON,<br><br>    Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN<br><br>    Defendant._____/ | No. C 12-5212 CRB<br><br>**ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Catherine Johnson appeals the denial of her application for social security benefits. Johnson and Defendant Carolyn Colvin, acting Commissioner of Social Security ("Commissioner"), have filed motions for summary judgment. The administrative record contains substantial evidence that supports the Commissioner's decision. Accordingly, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.

## I. BACKGROUND

### A. Procedural History

Johnson filed applications for Social Security Disability Insurance Benefits ("SSDI") and Supplemental Security Income ("SSI") on March 2, 2009, alleging disability beginning on January 7, 2007. Administrative Record ("AR") (dkt. 11) at 158, 165. The Social Security Administration ("SSA") denied the applications initially and upon reconsideration. Id. at 66, 71. Johnson then requested a hearing with an administrative law judge ("ALJ"). Id. at 76. Johnson, represented by counsel, and a vocational expert ("VE") testified at the hearing. Id. at 37. After the hearing, the ALJ issued a decision finding Johnson not disabled, and Johnson timely requested a review. Id. at 14-34. The Appeals Council considered Johnson's reasons for disagreeing with the ALJ's decision, along with the additional evidence of Johnson's electromyogram ("EMG") submitted by Johnson's attorney, and

denied the request for review. Id. at 1-6. Thus, the ALJ's decision is the final decision of the Commissioner. Id. at 1. Johnson seeks reversal of the final order or, in the alternative, remand for further proceedings. Pl.'s Mot. For Summ. J. ("P MSJ") (dkt. 17) at 19.

### B. Factual Background

#### 1. Johnson's Disability Claim

Johnson alleges disability beginning January 7, 2007, claiming multiple impairments that prevent her from working. See generally AR at 190-220. Her alleged impairments include numbness in her arms, legs, and lower back; pain in her knee, hip, and lower back; and depression, inability to sleep, mood swings, and cancer. See id.

#### 2. Administrative Hearing Testimony

At the hearing, the ALJ first reported the impairments that he gleaned from the record, including degenerative disc disease in Johnson's back, arthritis in her knees, "some depression and some cognitive disorders or thought processes," and past alcohol dependence. Id. at 43. Johnson added that she had experienced back pain for the last three years at a ten-out-of-ten level—ten being "agony," and one being "no pain or almost no pain"—for five days out of the week. Id. at 44. Johnson alleged numbness in her arms and pain in her neck and knees, although she stated that recent injections had helped her knee pain. Id. at 44, 46. Johnson testified that she last worked "dusting in stores for construction jobs" and, prior to that, as a sandwich maker. Id. at 42-43. When questioned about her physical abilities, Johnson responded that she could walk about one-and-a-half blocks without assistance, stand for about twenty minutes before having to sit, sit for about thirty minutes before having to stand, and "[lift] maybe ten pounds." Id. at 49. She also testified to attending Alcoholics Anonymous meetings about three times a week, using public transportation, watching television, performing chores, and preparing her own meals. Id. at 50-52.

In addition, the ALJ questioned Johnson concerning her mental issues. Johnson stated that, at the time of the hearing, she took Zoloft and Zestril for her mental disorders. Id. at 46. She further testified that she lacked "any control over her sadness." Id. at 47. The ALJ also asked Johnson about her past substance abuse, and Johnson denied any recent use of "Meth"

or consumption of alcohol. Id. The ALJ then asked Johnson about a prior incident where, when asked to provide a urine sample, Johnson stated that she did not have to urinate and needed to go to an appointment. Id. at 48. Johnson testified that she did provide a small sample and denied any adulteration of the test. Id.

The ALJ also posed three hypothetical scenarios to the VE involving individuals with different exertional abilities. Id. at 55-56. The first hypothetical individual:

> [C]ould lift up to twenty pounds occasionally, lift or carry ten pounds frequently, stand or walk for six and sit for up to six hours per eight hour day with normal breaks, who could frequently climb ramps or stairs, occasionally climb ladder [sic], ropes or scaffolds, frequently balance, occasionally stoop, frequently kneel, occasionally crouch, [and] frequently crawl.

Id. at 55. The VE responded that such an individual could perform the "Maintenance" position as the claimant had performed it. Id. The ALJ then described the second hypothetical individual as the "[s]ame as the first with regard to the exertional and postural limitations, but in addition, work [involving] limited to simple routine and repetitive tasks, normally simple work related decisions, [and] few, if any, work place changes." Id. The VE responded that such an individual could perform the same position previously identified. Id. The last hypothetical involved "an individual who could do simple routine tasks, but may not be able to recall instructions well enough to do simple repetitive tasks consistently and who would be unable to complete a full day's work without interruption from psychologically based symptoms." Id. at 56. The VE responded that such an individual could not perform any of the claimant's past work, adding that such an individual could not perform "any work." Id.

### C. Medical Evidence

#### 1. Treating Physicians

##### a. Physical Impairments

Johnson received treatment from Valley Medical Center from November 7, 1994, until March 11, 2004. Id. at 347-75. Id. Johnson later received treatment from Highland Hospital and Tiburcio Vasquez Clinic ("Tiburcio") from November 21, 2009, until March 15, 2011, complaining of pain in her back, knee, hip and neck, as well as numbness in her

3

arms and hands. Id. at 376-438. Tiburcio prescribed Celebrex, Vicodin, and Ibuprofen on numerous occasions to treat Johnson's pain symptoms. Id. at 376-402. In addition, Tiburcio's notes confirm that Johnson, when asked to provide a urine sample, initially "stated that she needed to leave and that she couldn't urinate/had no urge to go." Id. at 387. Johnson later provided a sample, and the toxicology report accompanying the notes indicated that Johnson's sample showed signs of possible adulteration. See id. at 387-88.

### b. Mental Impairments

The Tarzana Treatment Center ("Tarzana") admitted Johnson on December 29, 2008, for classes in Relapse Prevention, Substance Abuse, 12-Step Education, and Stress Management. Id. at 260. Tarzana's Psychological Symptom Checklist revealed, among other things, that Johnson did not have a "[d]epressed mood [for] most of the day," no "[i]ntense fear of being in social situations," and no "[f]eelings of hopelessness" in the prior two weeks. Id. at 261-64. The checklist shows, however, that Johnson had experienced distraction, mood shifts, restlessness, and excessive anxiety within the previous two weeks. Id. On January 9, 2009, the report of D. Carmalt, M.D.,[1] Johnson's attending physician at Tarzana, noted that Johnson was alert, oriented, cooperative, and possessed a steady gait, despite a past medical history of hypertension, lower back pain, and knee pain. Id. at 265-72. Johnson completed her treatment at Tarzana on March 29, 2009, "achiev[ing] all goals set forth on her treatment plan with enthusiasm [and] diligence." Id. at 296.

### 2. Consulting Physicians

### a. Physical Impairments

Johnson received physical evaluations from Sean To, M.D., on May 11, 2010, and G. Lee, M.D., on May 26, 2010. Id. at 306, 311, 344. The doctors' reports document Johnson's complaints of neck, shoulder, back, and arm pain, as well as hypertension. Id. at 306-15, 344-46. Based on his objective findings from the examination, Dr. To noted that Johnson would be limited to lifting and carrying twenty pounds occasionally and ten pounds frequently, standing and walking six hours a day, and would not be restricted in the following

---

[1] It is not clear from the record whether Dr. Carmalt was a treating or examining physician.

4

situations: sitting, bending, crouching, kneeling, crawling, stooping, climbing ladders, or using her hands. Id. at 309. Dr. G. Lee made largely similar findings regarding Johnson's exertional limitations. Id. at 311-16. Regarding credibility, Dr. G. Lee noted that Johnson was "[p]artially credible," stating that her allegation of cancer was "not supported by any objective evidence in [the] file." Id. at 315. Joel Younger, M.D., also performed an EMG of Johnson's upper limbs on June 6, 2011, which showed moderate carpal tunnel syndrome at Johnson's right wrist. Id. at 451, 456.

### b. Mental Impairments

Johnson received a psychological evaluation from K. Townsend, Ph.D., on May 11, 2010. Id. at 317. Dr. Townsend's general observations stated that Johnson was punctual, cooperative, and responsive to instructions. See id. In addition, Dr. Townsend reported that Johnson exhibited organized thinking, a productive stream of consciousness with appropriate content, and no obvious psychotic indicators. Id. at 319. Dr. Townsend also performed numerous psychological tests on Johnson. Id. at 320-321. According to Dr. Townsend, the tests showed Johnson possessed poor memory, fair insight, a Global Assessment of Functioning ("GAF") of fifty, and the ability to perform a simple repetitive task. Id. at 321. The report indicates that Johnson "would not be able to complete a full day's work without interruption from psychiatric symptoms;" however, she could "accept instructions from supervisors" and "has the social skills to interact appropriately with coworkers, supervisors, and the public." Id.

In addition, L. Rebecca Connell, a licensed clinical social worker at Tiburcio, performed a psychosocial assessment on Johnson on June 24, 2010, less than two weeks after the SSA's denial of Johnson's request for reconsideration. Id. at 390, 392. Connell noted that Johnson had feelings of depression stemming from the death of her daughter nineteen years ago, a low level of energy and self-esteem, guilty thoughts, insomnia, and decreased appetite and concentration. Id. at 390. Connell also reported that Johnson had cognition, concentration, memory, and intellectual functioning within normal limits; fair insight; good impulse control; no suicidal thoughts; a nice, cooperative, and pleasant manner; and no

1 delusions or hallucinations. Id. at 393. Lastly, Connell noted that Johnson sought
2 psychotherapy due to symptoms of depression, anxiety, and post-traumatic stress disorder
3 ("PTSD"), and she encouraged Johnson to seek mental health services concerning her
4 depression. Id. at 394-95.

5 Johnson received mental health treatment from Sausal Creek Outpatient Clinic on
6 April 14, 2011. Id. at 440. Johnson reported her amount of "distress or anxiety" at a level
7 ten-out-of-ten, meaning that "[i]t interferes with . . . daily activities a lot." Id. at 443. The
8 psychiatrist, Emma Castro, M.D., reported that Johnson was alert, engaged, exhibited good
9 insight and judgment with a sad affect and depressed mood. Id. at 449. She also reported
10 "rule out" PTSD, chronic back pain, hypertension, and alcohol dependence in full remission.
11 Id. at 449. Dr. Castro prescribed Sertraline and Hydroxyzine, noting Johnson's assertions
12 that the Sertraline had previously worked well but "ran out after [Johnson] was not on
13 parole." Id. at 440, 448. Lastly, Dr. Castro rated Johnson's GAF at fifty-five. Id. at 449.

### D. The ALJ's Decision

15 A person is "disabled" if he or she is unable to engage in substantial gainful activity
16 ("SGA") due to a physical or mental impairment that has lasted for a continuous period of
17 not less than twelve months. 42 U.S.C. § 423(d)(1)(A). An ALJ uses a five-step test to
18 evaluate Social Security disability cases. See 20 C.F.R. § 416.920(a)(4). In the first step, the
19 ALJ must determine whether the claimant is currently performing SGA. See id.
20 § 416.920(a)(4)(i). If the claimant is not performing SGA, the second step requires the ALJ
21 to determine whether the claimant has a "severe" impairment which significantly limits his or
22 her ability to perform basic work activities. See id. § 416.920(a)(4)(ii). If the ALJ concludes
23 that the claimant does not have a "severe" impairment, the claimant is not "disabled," and the
24 ALJ denies the claim. Id. If the claimant has a "severe" impairment, the third step requires
25 the ALJ to determine whether the impairment meets or equals the criteria of an impairment
26 listed in the relevant regulation. See id. §§ 416.920(a)(4)(iii); 404, Subpt. P, App. 1. If the
27 claimant does not meet or equal the criteria of a listed impairment, the fourth step requires
28 the ALJ to determine whether the claimant has sufficient residual functional capacity

6

1 ("RFC") to perform his or her past work. See id. § 416.920(a)(4)(iv). If so, the claimant is
2 not "disabled," and the ALJ must deny the claim. See id. In addition, the claimant has the
3 burden of proving that he or she is unable to perform past relevant work. Drouin v. Sullivan,
4 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, he or she has
5 presented a prima facie case of disability. Id. In the fifth step, the burden shifts to the ALJ to
6 establish that the claimant can perform other SGA. See id.; 20 C.F.R. § 416.920(a)(4)(v). If
7 the ALJ fails to meet this burden, the ALJ must find the claimant disabled. See 20 C.F.R.
8 § 416.920(a)(4)(v).

At step one, the ALJ found that Johnson had not engaged in SGA since her alleged onset date of January 1, 2007. AR at 22. At step two, the ALJ determined that Johnson had severe impairments of degenerative disc disease, a depressive disorder, and a cognitive disorder. Id. At step three, the ALJ found that Johnson did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Id. at 23. At step four, the ALJ noted that Johnson had a RFC limiting her "to work involving simple, routine and repetitive tasks involving only simple, work-related decisions with few, if any, work places changes." Id. at 24-25. The ALJ then thoroughly documented his reasoning and explained his determinations, concluding that the "claimant is capable of performing past relevant work as a maintenance (laborer) as performed" and "has not been under a disability" from January 1, 2007, through the date of the decision. Id. at 30.

## II. LEGAL STANDARDS

### A. Standard of Review

This Court must determine whether substantial evidence in the record supports the SSA's denial of benefits. 42 U.S.C. § 405(g). A court may overturn a decision to deny benefits only where "substantial evidence" does not support the ALJ's decision or the decision involves legal error. See Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989)). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

7

reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The ALJ must resolve determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities. Id. This Court will uphold the decision of the ALJ where the evidence is "susceptible to more than one rational interpretation." See id. at 1040.

### B. Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the lack of a genuine issue of material fact is on the moving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the nonmoving party, and a dispute is "material" if it could affect the outcome of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. DISCUSSION

Johnson proffers three arguments in response to the ALJ's decision. Johnson argues that the ALJ (1) improperly rejected the opinion of Dr. Townsend, (2) failed to make complete findings at step two, and (3) improperly found her not credible. See generally P MSJ. Since the ALJ's determination finds substantial support in the record and did not involve legal error, the Court GRANTS the Commissioner's motion for summary judgment.

### A. Opinion of Dr. Townsend

Johnson argues that the ALJ improperly rejected the opinion of Dr. Townsend. P MSJ at 9. An ALJ may reject an examining doctor's opinion only for "specific and legitimate" reasons that are supported by substantial evidence in the record. Andrews, 53 F.3d at 1041. The ALJ thoroughly discussed Dr. Townsend's opinion and offered numerous valid reasons

8

for attributing it minimal weight. Accordingly, the Court finds that substantial evidence supports the ALJ's decision.

The "RFC assessment must always consider and address medical source opinions," and in cases where the ALJ's assessment conflicts with an opinion from a medical source, the ALJ "must explain why the opinion was not adopted." Social Security Ruling 96-8p. Courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician is one that provides, or has provided, the claimant with medical treatment and has, or has had, an ongoing relationship with the claimant. See 20 C.F.R. § 404.1502. Generally, more weight is given to a treating physician's opinion as to the nature and severity of a claimant's impairments. Id. § 416.927(c)(2). Nevertheless, a treating physician's opinion is only regarded as controlling where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Id. The ALJ must provide specific and legitimate reasons for discounting a treating physician's opinion. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990). In determining how much weight to give an opinion that does not receive "controlling weight," an ALJ must look to numerous other factors, including the length of the treatment relationship, the frequency of examinations, the nature and extent of the relationship, evidence supporting the opinion, consistency of the opinion, and the doctor's specialization. See 20 C.F.R. § 404.1527(c).

Johnson argues that the ALJ improperly rejected Dr. Townsend's opinion and, in so doing, failed to consider the VE's testimony concerning her inability to work. Specifically, Johnson stated that the ALJ's reasons are "internally inconsistent" and faulty since other mental health evaluations contained some similar findings to the one performed by Dr.

9

Townsend. P MSJ at 10. However, the ALJ's findings show a careful analysis of past medical records with detailed reasons for crediting or discrediting certain portions of records and reports. First, the ALJ thoroughly described Dr. Townsend's findings, diagnoses, and ultimate conclusion from Johnson's psychological evaluation. See AR at 28-29. Although the ALJ attributed less weight to Dr. Townsend's opinion, the ALJ did not flatly reject the opinion. Rather, the ALJ provided specific reasons for discounting parts of it, stating that "the limitations [described by Dr. Townsend] are more restrictive than what is shown in the evidence." Id. at 29. The ALJ reasoned that Johnson had "no reported history or diagnosis of a cognitive impairment" and "no history of special education as a child and appears to have the ability to accurately report her treatment history to various examiners." Id. In addition, the ALJ noted that Johnson "has received infrequent psychiatric treatment," adding that the treatment notes indicated no "demonstrated regular symptoms related to a psychiatric impairment." Id. Finally, the ALJ stated that Johnson "was frequently noted to be pleasant and cooperative" and had recently started taking psychiatric medications to treat her symptoms. Id. Based on these well-supported findings, the ALJ discounted the portions of Dr. Townsend's opinion that did not reflect the evidence.

Second, the factors that an ALJ considers in determining the weight of an opinion support the ALJ's decision to attribute Dr. Townsend's opinion less weight. Dr. Townsend was an examining doctor ordered by the Disability Determination Service to perform the consultation. Id. at 317. She had no previous or ongoing treatment relationship with Johnson. Additionally, Dr. Townsend's opinion is, as described by the ALJ, inconsistent with other evidence from the record. The ALJ's decision specifically identifies inconsistencies between Dr. Townsend's opinion and the medical evidence. For example, Dr. Townsend stated that Johnson may not recall instructions well enough to do a simple repetitive task consistently or complete a full day of work without interruption from psychiatric symptoms. Id. at 321. However, the record shows, as the ALJ points out, that Johnson had no history of a cognitive impairment or special education and infrequently received psychiatric treatment. Also, Johnson had recently started taking medications to

10

alleviate her symptoms. In light of the factors for determining the weight to be given to a particular opinion, the ALJ provides sufficient reasons to discount Dr. Townsend's opinion.

Finally, Johnson's argument that two other mental health reports supported Dr. Townsend's opinion is inaccurate. While the two reports show that Johnson faced problems with concentration, sadness, depression, and anxiety, the same reports also show that Johnson exhibited cognition, orientation, insight, judgment, and intellectual functioning within normal limits. See id. at 393, 449. Further, the report by Dr. Castro shows that she prescribed Johnson medication and referred her to counseling to treat her symptoms. Id. at 449. Neither of the reports contain findings of mental limitations affecting Johnson's ability to work as severe as those found by Dr. Townsend.

Johnson also argues that her GAF score of fifty supports a finding of disability. However, the case law that Johnson cites is not persuasive. For example, Sousa v. Chater stated that a GAF score of fifty indicates that a claimant "was likely experiencing great difficulty functioning in the workplace." See Sousa v. Chater, 945 F. Supp. 1312, 1326 (E.D. Cal. 1996), rev'd sub nom. Sousa v. Callahan, 143 F.3d 1240 (9th Cir. 1998). Likewise, Boston v. Chater involved a claimant with a GAF of fifty and "atypical psychosis." See Boston v. Chater, 1995 WL 708552, at *4 (E.D. Pa. Nov 28, 1995). Neither case holds that a GAF alone establishes a finding of disability. While a low GAF score can indicate a possible disability, courts typically consider mental and physical impairments in conjunction with a GAF score to determine whether a disability exists. See, e.g., Cashaw v. Astrue, 2009 WL 86584, at *1 (C.D. Cal. Jan. 13, 2009) ("[T]he cases do not give the GAF alone such prominence."); see also Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992) (noting that courts review the administrative record in its entirety).

In addition, Dr. Castro's report rated Johnson's GAF at fifty-five, demonstrating a five-point increase from Dr. Townsend's prior assessment taken when Johnson was not receiving mental health treatment. Again, while Johnson cites authorities discussing low or decreasing GAF scores, she fails to acknowledge the five-point increase. See, e.g., P MSJ at 11 (citing Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968 (9th Cir. 2000), which

involved a claimant's declining GAF from seventy to sixty).  Regardless, a GAF of fifty or fifty-five is not alone determinative of a finding of disability as defined by the SSA.  See 42 U.S.C. § 423(d)(1).  Consequently, the case law does not support Johnson's argument.

### B. "Step Two" Findings

Johnson argues that the ALJ failed to make a complete finding as to her physical and mental impairments at step two and, thus, committed "reversible error."  P MSJ at 13.  Step two, also known as the "severity requirement," is a "de minimis screening device to dispose of groundless claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  The ALJ evaluated Johnson's record and found that Johnson had multiple severe impairments that would significantly impair her ability to perform basic work activities.  AR at 22-23.  In answering step two affirmatively, the ALJ then continued the five-step analysis, evaluating Johnson's alleged impairments and the entire medical record.  Id. at 23-29.  Yet Johnson argues that the ALJ failed to specify the type of degenerative disk disease and to analyze all of her mental impairments.  See P MSJ at 12-14.  However, the ALJ considered all of Johnson's physical and mental impairments that were supported by reliable evidence, regardless of their severity.  Thus, the Court finds that the ALJ did not err in his analysis.

In determining disability, the SSA considers all of a claimant's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  See 20 C.F.R. §§ 404.1529, 416.929.  "[A claimant's] statements about [his or her] pain will not alone establish that [he or she is] disabled."  Id.  Further, "there must be medical signs and laboratory findings which show that [he or she has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of [his or her] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [he or she is] disabled."  Id.

In his decision, the ALJ correctly considered Johnson's impairments by following a two-step process.  See AR at 25.  He first determined whether an underlying medically

12

determinable physical or mental impairment existed that could reasonably be expected to produce Johnson's pain or other symptoms. Id. Once the ALJ found an impairment, he next determined the extent to which the intensity, persistence, and limiting effects of the symptoms limited Johnson's functioning. Id. In addition, when objective medical evidence did not support Johnson's statements concerning the effects, the ALJ then made a finding on the credibility of her statements based on a consideration of the "entire case record." Id.

In his analysis, the ALJ correctly followed the structure described in 20 C.F.R. § 404.1527 and § 416.927. He considered Johnson's own statements along with multiple doctors' assessments concerning her physical impairments affecting her ability to work. Throughout the decision, he described his reasons for arriving at the RFC assessment, particularly citing different parts of the record that substantiate the findings. See generally AR 22-29. Likewise, the ALJ properly assessed Johnson's mental impairments and thoroughly described the process used in reaching his decision. See id. at 23-24. Specifically, the ALJ considered the "paragraph B" and "paragraph C" criteria, concluding that Johnson failed to satisfy either. See id. These assessments take into account Johnson's functional limitations, regardless of the mental impairment that creates the limitation or limitations. Since the ALJ's decision contains substantial support in the record and is not based on legal error, the Court upholds his determination finding Johnson not disabled.

**C. Credibility Determination**

Johnson argues that the ALJ improperly found that she was not credible. P MSJ at 15. The SSA will consider a claimant's "statements about the intensity, persistence, and limiting effects . . . in relation to the objective medical evidence and other evidence, in reaching a conclusion" as to disability. 20 C.F.R. § 404.1529(c)(4). Further, the SSA considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [claimant's] statements and the rest of the evidence." Id. "If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the

court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958 (9th Cir. 2002).

The ALJ cited numerous reasons for discrediting Johnson's statements concerning the intensity, persistence, and limiting effects of her symptoms. <u>See</u> AR 26-27. The ALJ noted Johnson's inconsistent statements regarding her past substance abuse history and psychiatric treatment history. <u>Id.</u> In addition, the ALJ found inconsistencies between Johnson's daily activities and her alleged intensity of pain. <u>Id.</u> These observations point directly to different parts of the record that substantiate each finding. Each of the ALJ's reasons supporting his determination are "specific, clear and convincing" and have ample support from the evidence in the administrative record. <u>See</u> <u>Tommasetti</u>, 533 F.3d at 1039. Further, the ALJ followed the proper protocol in evaluating Johnson's statements and, thus, did not commit legal error. <u>See</u> 40 U.S.C. § 404.1529 (discussing the procedure for evaluating pain). Therefore, the Court finds that the ALJ's credibility determination was not improper.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: July 2, 2014

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE